IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY WALTERS, ) | |
| ) | Civil Action No. 09 - 579 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SUPERINTENDENT MICHAEL HARLOW; ) | District Judge Kim R. Gibson |
| FRED RUFFO; Deputy Superintendent; LT. G. ) | Magistrate Judge Lisa Pupo Lenihan |
| YOCUM; REV. BILL OHL; DOUGLESS ) | |
| MORONSKI, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.       RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 26) be granted.

**II.      REPORT**

Plaintiff, Jeffrey L. Walters, a state inmate currently confined at the State Correctional Institution at Mercer, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against various officers and employees of the Pennsylvania Department of Corrections (DOC) concerning a decision of the Religious Accommodation Review Committee to uphold the institution's recommendation to deny the plaintiff a hair-length exemption. Defendants have moved for dismissal alleging that failed to comply with the DOC three-step grievance process available to Pennsylvania state prisoners. For the reasons that follow, the Motion should be granted.

**A. Standard of Review**

Defendants have filed a Motion to Dismiss (doc. no. 26). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to

relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, Civ. No. 99-1674, 2000 WL 1372834, at *2 (S.D.N.Y. Sept. 25, 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)). *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein). *Accord* Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol.

Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972).

### B. Plaintiff's Allegations

Plaintiff asserts that he arrived at SCI-Camp Hill on September 16, 2008 and was told that if he wanted to keep his hair he would have to join the Native American Christian services and apply for a Religious Accommodation haircut exemption from DOC policy 807 regarding inmate grooming. In November of 2008, Plaintiff was transferred to SCI-Mercer and continued to attend Native American Christian services. On February 2, 2009, Plaintiff applied for a Religious Accommodation haircut exemption, which ultimately was denied. On March 16, 2009, Plaintiff received Misconduct No. A270884 for refusing to obey a direct order, *i.e.* to get a haircut. Plaintiff was found guilty of the misconduct and received thirty days disciplinary time. On April 17, 2009, Plaintiff received another misconduct again for disobeying a direct order to get a haircut. Subsequently, Plaintiff made contact with the Secretary's Office of Inmate Grievances & Appeals resulting in the issuance of a File Without Action letter dated May 15, 2009 informing Plaintiff of the DOC grievance policy under DC-ADM 804.

On June 14, 2009, Plaintiff submitted Grievance No. MER 277025-09 complaining about the denial of his hair exemption (doc. no. 26-1, p. 4). On June 19, 2009, Plaintiff's grievance

was denied on the basis that Plaintiff did not meet the requirements to be exempt from the DOC grooming standards (doc. no. 26-2, p. 6).  Plaintiff did not file any appeal from this denial.

### C. Failure to Exhaust Administrative Remedies

Defendants' first basis for dismissal of this action is Plaintiff's failure to have exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996).  In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners.  Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit.  The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a)   Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner).  In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions.  In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion

requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The available administrative remedies for Pennsylvania inmates are codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." *See, e.g.* Mitchell v. Horn, 318 F.3d 523 (2003) (discussing DOC Grievance System). The purpose of the grievance system is to ensure that "every individual committed to [DOC] custody shall have access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. For every such issue, there shall be a forum for review and two avenues of appeal. The formal procedure shall be known as the Inmate Grievance System." DC-ADM 804 ¶ V. The DOC grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the chief hearing examiner.

The administrative policy further provides that, prior to utilizing the grievance system, prisoners are required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member. DC-ADM 804 ¶ V. Inmate grievances must be in writing and in the format provided on the forms supplied by the institution. DC-ADM 804 ¶ (VI)(A)(1)(f). An initial grievance must be submitted by the inmate to

the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. DC-ADM 804 ¶ (VI)(A)(1)(h). Specific procedures for the appeal by an inmate of an unsatisfactory decision on a grievance are also provided.

In the instant action, Plaintiff failed to have exhausted his administrative remedies in that he failed to have completed the three-step grievance process provided for in DC-ADM 804. In this regard, Plaintiff did not file a grievance concerning the denial of his haircut exemption **until after** he filed the suit in the instant action. Moreover, Plaintiff did not take any further action with respect to that grievance, that is, it was not appealed to the Superintendent or to the Secretary's Office. In his Response to Defendants' Motion, Plaintiff does not deny that he did not appeal this grievance; he merely states that because he appealed his misconduct to final review, that was sufficient. Plaintiff's response is both factually and legally incorrect.

While Plaintiff did appeal his misconduct, on final appeal it was noted that Plaintiff pleaded guilty to the charges and therefore, he was unable to contest the facts resulting in his determination of guilt (doc. no. 30-1, p. 3). Thus, the correctness of the decision denying Plaintiff's religious accommodation request was not, and could not have been, the basis of any appeal from his misconduct. Moreover, Plaintiff was informed that in order to "appeal" the denial of a religious accommodation request, he must file a grievance (doc. no. 30-2, p. 2). So, he did file a grievance and then inexplicitly failed to appeal to the Superintendent and Final Review.

The Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). In so holding, the Court of Appeals specifically held that failing to specifically name accused individuals in a grievance amounted to procedural default

because the regulations so required.[1]  The United States Supreme Court adopted a similar holding in Woodford v. Ngo, 548 U.S. 81 (2006) wherein it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 548 U.S. at 90-91 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage.  The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 548 U.S. at 93.  The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims,

---

[1]. The relevant regulations provide as follows: "The inmate shall include a statement of the facts relevant to the claim.  The inmate should identify any persons who may have information that could be helpful in resolving the grievance.  The inmate should also include information on attempts to resolve the matter informally.  DC-ADM 804, Part VI.A.1.d.

which required the grievant to comply with the procedural rules. *Id*. at 94.

In the case at bar, Plaintiff procedurally defaulted all of his claims in two major respects. First, by failing to grieve his claims within the mandatory fifteen day period. Second, by failing to appeal the grievance he did file to the second and third levels of appeal. Given that Plaintiff now is time-barred from rectifying his mistakes, it appears to this Court that Plaintiff, as a matter of law, cannot prevail in his suit. Furthermore, any opportunity afforded to Plaintiff to amend his complaint would be futile.

In the absence of any controlling authority to the contrary, this Court is required to follow the directives of the Court of Appeals for the Third Circuit and grant Defendants' Motion to Dismiss due to Plaintiff's failure to have properly exhausted his available administrative remedies.

### III. CONCLUSION

For the reasons stated above it is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 26) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: April 22, 2010                                By the Court:

                                                                                  /s Lisa Pupo Lenihan
                                                                     LISA PUPO LENIHAN
                                                                     United States Magistrate Judge

cc:    Jeffrey L. Walters, HS-8744
         SRCF Mercer
         801 Butler Pike
         Mercer, PA 16137